# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**CECILE M. LESCS,**

       Plaintiff,

**v.**                                 **CIVIL ACTION NO.: 3:14-CV-96**
                                       **(JUDGE GROH)**

**BERKELEY COUNTY SHERIFFS**
**OFFICE, et al.,**

       Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER, MOTION TO REOPEN CASE, AND MOTION FOR DAMAGES

Currently pending before the Court are the *pro se* Plaintiff's Motion for Temporary Restraining Order, Motion to Reopen Case, and Motion for Damages, filed on August 25, 2014. ECF 2. For the following reasons, the Court **DENIES** these motions.

### I. Background[1]

On August 25, 2014, the Plaintiff initiated this case by filing a complaint against the Berkeley County Sheriffs Office, Deputy Steerman, Walmart, Inc., Mr. Ferebeu, Travis "Doe," Berkeley County Ambulance Service, John Doe 1 (Helicopter Service, Inc.), John Doe 2 (driver of ambulance), John Doe 3 (pilot of helicopter), John Doe 4 (deputy driver of sheriff's car), John Doe 5 (Berkeley Sheriff's Office desk clerk), John Doe 6 (passenger with rifle in helicopter), John Does 7 through 30, Jane Does 31 through 60, and the Office of the Director of National Intelligence.

---

[1] Because the Plaintiff is proceeding *pro se*, the Court liberally construes her filings. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

The Plaintiff rests her complaint on the following allegations. On August 25, 2012 at approximately 2:00 a.m., the Plaintiff was in her car in the parking lot of a Wal-Mart in Spring Mills, West Virginia. A Berkeley County ambulance parked a few feet from her car's right side. Fifteen minutes later, a black helicopter flew over her car and landed behind it. The Plaintiff opened the rear door of her car to see what was happening. When she did so, a man in a uniform opened the helicopter door and aimed a long range rifle at her face. The Plaintiff closed the car door and laid low on her car's rear seat. The Plaintiff "was completely blocked and confined by the ambulance on the right side, a raised concrete curb on the left side, a helicopter with a man aiming a rifle at her, and a Berkeley County Sheriff's car directly in front of the helicopter." Compl. at 4. She avers she could not move her car and was afraid to get out of it. The Plaintiff stayed in the rear seat of her car until 4:00 a.m. when the helicopter and sheriff's car left. The ambulance left at 4:30 a.m.

That same morning, the Plaintiff entered the Wal-Mart and spoke with the manager, Mr. Ferebeu, and a night manager about what happened. They stated there had been a shooting victim in the area who was taken to a hospital. The Plaintiff went to a Sheetz convenience store across the street from the Wal-Mart at 6:30 a.m. There, "an older white male with a scruffy beard and glasses" with "a very large <u>Creative Communications, Inc.</u> satellite feed video van getting gas" behind him watched her intently. <u>Id.</u> at 5. The Plaintiff alleges that the man was James Clapper, Jr., Director of National Intelligence.

Sometime later, the Plaintiff went to the Berkeley County Sheriff's Office and spoke with a desk clerk. The clerk told her that there was a fire at the Wal-Mart the morning of August 25. Also during this visit, Berkeley County Deputy Steerman told the Plaintiff: "[A]t least we didn't break your windows and drag you out of your car, did we?" <u>Id.</u> at 6. The

2

Plaintiff alleges this statement acknowledges what occurred in the Wal-Mart parking lot and was "cruel and degrading." Id.

Based on these allegations, the Plaintiff raises six claims: (1) false imprisonment; (2) assault with a deadly weapon; (3) intentional infliction of emotional distress; (4) fraud; (5) libel, slander, and defamation; and (6) violations of the Geneva Convention of 1944. She bases her false imprisonment, assault, and intentional infliction of emotional distress claims on the alleged incident in the Wal-Mart parking lot. Her fraud claim is grounded on her allegations that certain defendants "made false and misleading statements to her the morning after" the alleged incident "to conceal their unlawful activity." Id. at 8. Her libel, slander, and defamation claim raises additional allegations–that the defendants falsely called her "a 'terrorist,' a 'crazy person,' [and] a 'schizophrenic'" and paid third parties in her neighborhood to "circulate these unfounded descriptions." Id. Finally, the Plaintiff alleges the defendants violated the Geneva Convention of 1944 "over the span of many years" in various ways, such as by causing her to lose employment, confiscating her property, vandalizing her home, and causing incidents while she was driving.

With her complaint, the Plaintiff filed a motion for a temporary restraining order ("TRO"), a motion to reopen a case that this Court dismissed, and a motion for damages. The Court will address these motions in turn.

## II. Discussion

**1. Motion for Temporary Restraining Order**

The Plaintiff seeks a TRO to protect her and her family "from any further cruel, degrading and unlawful or life threatening acts by these defendants or by third parties

associated with" them. Id. at 10-11.

The Court may grant an *ex parte* TRO under Federal Rule of Civil Procedure 65(b) only if the Plaintiff meets two requirements. First, her complaint must set forth "specific facts" that "clearly show that immediate and irreparable injury, loss, or damage will result to [her] before the [Defendants] can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, the Plaintiff must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); see also Tchienkou v. Net Trust Mortg., Civil Action No. 3:10-CV-23, 2010 WL 2375882, at *1 (W.D. Va. June 9, 2010) (applying this requirement to *pro se* plaintiff seeking TRO).

"A preliminary injunction is an extraordinary remedy . . . ." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345 (4th Cir. 2009) (citations omitted) (hereinafter Real Truth). In Real Truth, the United States Court of Appeals for the Fourth Circuit adopted the standard of review for preliminary injunctions set forth by the Supreme Court in Winter v. Natural Res. Def. Counsel, Inc., 555 U.S. 7 (2008). See id. at 346-47. Under that standard, a plaintiff must establish four elements to obtain a preliminary injunction: "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" Id. at 346 (quoting Winter, 555 U.S. at 374).

Here, the Plaintiff has not certified in writing any efforts that she made to notify the Defendants of this motion or explained why the Court should not require such notice. The certification requirement is key to safeguarding the Defendants' right to due process. Tchienkou, 2010 WL 2375882, at *1 (noting the due process concerns underlying Rule 65(b)'s requirements). Thus, this is a sufficient basis to deny a TRO. See id.

4

Even if the Plaintiff provided the necessary certification, she has not shown that she will likely suffer irreparable harm without preliminary relief. The Plaintiff must show "'that injury is certain, great, actual and not theoretical.'" Harper v. Blagg, Civil Action No. 2:13-cv-19796, 2014 WL 3750023, at *2 (S.D.W. Va. May 21, 2014) (quoting Tanner v. Fed. Bureau of Prisons, 433 F. Supp. 2d 117, 125 (D.D.C. 2006)). Here, the Plaintiff vaguely alleges that she faces "cruel, degrading and unlawful or life threatening acts." Compl. at 10-11. Even a liberal reading of the complaint shows that this harm is only theoretical. The complaint largely alleges acts of the Defendants that occurred on or around August 25, 2012 and past statements they made about the Plaintiff. Because these actions happened in the past, they do not threaten future harm to the Plaintiff. To the extent that the Plaintiff alleges the Defendants have harmed her over the years (e.g., by vandalizing her home), the nature of any future harm that may stem from these allegations is unclear. There are no details regarding the specific actions that allegedly harmed the Plaintiff or who took such actions. Thus, the Plaintiff has only shown a theoretical injury. That is insufficient to establish irreparable harm. See Harper, 2014 WL 3750023, at *2.

Accordingly, the Court denies the motion for a TRO because the Plaintiff has neither complied with Rule 65(b)(1)(B)'s certification requirement nor shown irreparable harm.

**2.     Motion to Reopen Case**

In the Motion to Reopen Case, the Plaintiff seeks an order reopening "Case No \_\_\_\_\_ filed by Plaintiff in the U.S. District Court for the District of Columbia" and later transferred to this Court. Compl. at 11. She avers that this Court dismissed this case in 2003. The Plaintiff argues that the Court should hear this case along with her prior case because they involve similar facts, parties, and law.

Under Federal Rule of Civil Procedure 60(b), a court may relieve a party from a final judgment for one of the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

A motion to reopen a case under this rule "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Subsections (1) through (3), however, are not grounds for relief "more than a year after the entry of the judgment." Id. Further, for subsection (6) to justify relief, a plaintiff must show "extraordinary circumstances" that do not fall under subsections (1) through (5). Pension Benefit Guar. Corp. v. Boury, Inc., Civil Action No. 5:02CV161, 2008 WL 2803798, at *1 (N.D.W. Va. July 18, 2008).

As a threshold matter, it is unclear which case the Plaintiff seeks to open. A review of the docket reveals that this Court dismissed two cases in 2004 that the Plaintiff brought against the Martinsburg Police Department and various defendants: civil action numbers 3:03-CV-4 and 3:03-CV-7.

Even if the Court could identify the case at issue, none of the six grounds for reopening it apply. Subsections (1) through (3) do not apply because the Court dismissed the case over one year ago. Subsections (4) and (5) also do not justify reopening the case

as the Plaintiff does not allege the judgment is invalid for any of the reasons set forth in these provisions. Finally, relief is improper under subsection (6). The fact that the past case may involve similar facts, parties, and law is common in litigation, not an extraordinary circumstance. Accordingly, the Court denies the Motion to Reopen Case.

### 3. Motion for Damages

Finally, to the extent the Plaintiff seeks an immediate award of damages through her Motion for Damages, the Court lacks authority to grant such relief because the Plaintiff has not succeeded on any of her claims. Accordingly, the Court denies this motion.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** the Plaintiff's Motion for Temporary Restraining Order, Motion to Reopen Case, and Motion for Damages.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and *pro se* parties.

**DATED:** September 23, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE